[Civ. No. 21972. First Dist., Div. Two. Apr. 19, 1965.]

ANGELO BIAGI, Plaintiff and Respondent, v. MARGARET BIAGI, Defendant and Appellant.

John J. Whelan, Michelson, Whelan & Michelson and Herbert Chamberlin for Defendant and Appellant.

Sparks, Mylod & Lanam, William F. Lanam, Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Plaintiff and Respondent.

TAYLOR, J.—On this appeal by defendant wife from an order entered October 8, 1963, decreasing her alimony payments, the sole contention is that the court lacked jurisdiction to so modify the divorce decree as the property settlement agreement of the parties was an integrated agreement.

The facts are not in dispute. On September 21, 1960, after almost 17 years of marriage, plaintiff husband obtained an interlocutory decree of divorce from defendant on the ground of extreme cruelty. The interlocutory decree entered on the default of defendant awarded the community property and the custody of the three minor children to plaintiff and a token alimony payment of $1.00 a month to defendant. Subsequently, defendant was relieved of her default and answered. Thereafter, in April 1961, the parties entered into a property settlement agreement and stipulated that its provisions were to be included in the interlocutory decree and substituted for the previous custody, alimony and support provisions of the decree of September 21, 1960. The property settlement agreement awarded custody of the children to defendant and divided the community property, giving the family home at 2232 Portsmouth to defendant. It further provided that plaintiff was to pay defendant $125 a month alimony, make an $88 a month payment on the family home, and pay all real estate taxes and insurance on the home.

The court's order amending the interlocutory decree to include the provisions of the property settlement agreement was entered on May 15, 1961. The final decree of divorce referring to the provisions of the amended interlocutory decree was entered October 10, 1961. In April 1963, following defendant's commitment to the Agnew State Hospital, the custody and child support provisions were modified to give plaintiff full custody of the children and relieve him of the child support provisions of the decree.

In September 1963, plaintiff filed his motion for a further modification, alleging that he had agreed to the various payments on the Portsmouth property to provide a home for the children; that they were no longer living there and, because of defendant's condition, would not be in the future. After a hearing at which both plaintiff and defendant testified as to their financial condition, the court entered the order of mod-

ification here in issue. The order, entered October 8, 1963, provided that as of November 30, 1963, plaintiff was to pay defendant $125 a month for her support and maintenance and to discontinue the payments on the mortgage, taxes and insurance on the Portsmouth home.

Defendant contends that the court was without jurisdiction to enter the order of modification because, in the agreement of the parties, the various payments on the Portsmouth property were integrated into and made a part of the property settlement. Plaintiff, on the other hand, contends that the provision was neither an integrated agreement, nor incorporated into either the interlocutory or final decree of divorce, and that it was, therefore, subject to modification. The question is one of law and we are not bound by the trial court's interpretation (*Messenger* v. *Messenger,* 46 Cal.2d 619, 626 [297 P.2d 988]).

Plaintiff's contention that the agreement was not incorporated into the decrees or approved by the court is spurious and need not be discussed in detail. The record indicates that the interlocutory decree was amended to conform to the agreement by stipulation of the parties. The agreement by its very terms so provides. Although not specifically incorporated into the decrees by reference, the record supports the inference that the agreement was approved by the court and merged into the final decree (*Flynn* v. *Flynn,* 42 Cal.2d 55, 58-59 [265 P.2d 865]). In any event, the controlling question of severability is not altered by the incorporation of the agreement into a decree of court or by the merger resulting therefrom. The court looks through the decree to the agreement and determines the rights of the parties in this respect just as though there were no merger (*Kelley* v. *Kelley,* 151 Cal.App.2d 228, 233 [311 P.2d 90]).

We turn, therefore, to the crucial question as to whether the agreement of April 3, 1961, was integrated.[1] The question here presented has been frequently and repeatedly discussed by the appellate courts of this state. It is settled that a court may modify the terms of a property settlement agreement that has been incorporated into a divorce decree if it finds the provisions of the agreement as to the disposition of the property and as to alimony to be severable. Since

---

[1]The applicable statutory provision is section 139 of the Civil Code as it read before the 1961 amendment, which was subsequently repealed in 1963. (See *Heller* v. *Heller,* 230 Cal.App.2d 679, 685 [41 Cal.Rptr. 177].)

the law fixes the extent of the obligation of support, that power of the court continues even if the parties themselves have agreed upon the amount of alimony and included it, among other and separable provisions, in a property agreement (*Roberts* v. *Roberts*, 226 Cal.App.2d 507, 511 [38 Cal.Rptr. 176]).

On the other hand, the court has no power to change the terms of a property settlement agreement that relates only to the division of the property. Hence, if in the agreement the provision for support is exchanged for a share of the community property, the agreement constituting an integrated all-embracing bargain, the court cannot modify its terms.

Thus, the courts have been concerned with whether the agreement is in reality a settlement of property rights which includes as an integral part a support provision, or whether there is nothing more than a separable support provision contained within the agreement. Only in the latter instance do the courts, in the exercise of their long-recognized authority and responsibility arising from the relationship of the parties, retain the power to determine the support, and to modify, if necessary, the settled amount (*Carson* v. *Carson*, 179 Cal.App. 2d 665, 668-669 [4 Cal.Rptr. 38]).

Mr. Justice Bray sets forth the following established guidelines in *Roberts* v. *Roberts*, *supra*, 226 Cal.App.2d 512:

1. The fundamental inquiry in determining the character of the agreement is as to the intent of the parties (*Clark* v. *Clark*, 198 Cal.App.2d 521, 529 [17 Cal.Rptr. 652]; *Baker* v. *Baker*, 192 Cal.App.2d 730, 732 [13 Cal.Rptr. 772]).

2. The absence in a property settlement agreement of any statement that the support provisions constitute reciprocal consideration for the property provisions is not conclusive if there is other proof of the parties' intent.

3. The fact that support payments may be designated ''alimony,'' while entitled to some consideration in an effort to ascertain the intent of the parties, is not controlling.

4. The fact that the provision for support is separately stated from the provision with respect to the division of the community property does not necessarily indicate that the provisions are severable.

5. Where a husband and wife have made provisions for support and maintenance an integral part of their property settlement agreement, the support payments will ordinarily have a dual character. To the extent they are designed to dis-

charge the obligation of support and maintenance, they will ordinarily have the indicia of alimony; but to the extent they represent a division of community property itself, or constitute an inseparable part of the consideration for the property settlement, they are not alimony and accordingly cannot be modified without changing the terms of the property settlement agreement (*DiMarco* v. *DiMarco,* 60 Cal.2d 387, 391-392 [33 Cal.Rptr. 610, 385 P.2d 2]).

With the foregoing rules in mind, we turn to the following pertinent provisions of the agreement.

"II D. The parties hereto desire, by this agreement, to settle and adjust, as between themselves, their respective property rights, and to provide for the future support of the wife and children."

The next paragraphs list certain items of community property and divide the community property, awarding certain items to the wife, including the family home at 2232 Portsmouth with its furnishings, and allocating to the husband the 1958 automobile and all other community property not fully set forth.

The alimony provision here in issue reads as follows: "IX Alimony: A. Husband agreed to pay to wife for her support and maintenance, the sum of One Hundred and Twenty-Five ($125.00) Dollars as alimony. In addition, the husband agrees to pay to the wife the house payment of $88.00 for the house occupied by the wife and children at 2232 Portsmouth, San Mateo, California, and to pay the real estate taxes and insurance on the said house. That this payment of $88.00 for the house payment and the real estate tax payment and the insurance on the house shall be construed as alimony."

Paragraph XI states: "A. Except as otherwise provided in this agreement, each party of this agreement does hereby release the other from any and all liabilities, debts or obligations, of every kind or character, heretofore or hereafter incurred, and from all claims and demands, including all claims of either party upon the other for support and maintenance as wife or husband, it being understood that this present agreement is intended to settle the rights of the parties hereto in all respects."

Paragraph XII provides that the agreement is to be binding on heirs and executors.

In *Roberts* v. *Roberts,* 226 Cal.App.2d 507 [38 Cal.Rptr. 176], *Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873], *DiMarco* v. *DiMarco,* 60 Cal.2d 387 [33 Cal.Rptr. 610, 385 P.2d 2],

and *Plumer* v. *Plumer,* 48 Cal.2d 820 [313 P.2d 549], where the agreements were held to be integrated, they contained statements similar to paragraph II D evidencing an intent to settle both the division of their property rights and their rights and duties with respect to support and maintenance, and they also contained the waiver provisions set forth in paragraph XI A.

██ As indicated in *Dexter, supra,* at page 41, the express waiver by the wife of her right to support and maintenance, other than as provided in the agreement, is persuasive evidence that the support provisions are inseverable from the property division provisions.

In *Plumer, supra,* at page 825, the court stated: "An agreement providing that the purpose of the parties is to reach a final settlement of their rights and duties with respect to both property and support, that they intend each provision to be in consideration for each of the other provisions, and that they waive all rights arising out of the marital relationship except those expressly set out in the agreement, will be deemed conclusive evidence that the parties intended an integrated agreement. [Citations.]" All of the provisions there stated are found in the agreement in the case at bench, save only an express provision to the effect "that they intend each provision to be in consideration for each of the other provisions," and as stated in *Plumer, supra,* page 825, "Even absent one or more of the foregoing provisions, there may be other proof that the parties intended an integrated agreement." ██ The absence in a property settlement agreement of any statement that the support provisions constitute reciprocal consideration for the property provisions is not conclusive if there is proof of the parties' intent (*DiMarco* v. *DiMarco, supra*).

██ Taking the agreement in the instant case by its four corners, it is evident that the parties actually intended each provision thereof to be in consideration for each of the other provisions. From the provisions of paragraphs II and XI, on the basis of the authorities cited, the inference is clear that the parties intended an integrated agreement. It is not necessary that the parties expressly recite such an intent, when the agreement itself makes the intent clear. We note that paragraph XIII of the agreement states that both parties were represented by counsel of their own choosing who fully explained the legal effect of the various provisions.

Plaintiff argues that the fact that paragraph IX is labeled

"Alimony" and expressly provides that it is to be construed as alimony, indicates an intent to create a severable and modifiable alimony provision. While the labels used by the parties are not controlling (*Fox* v. *Fox,* 42 Cal.2d 49 [265 P.2d 88]; *Messenger* v. *Messenger,* 46 Cal.2d 619 [297 P.2d 988]), they are nevertheless entitled to consideration as indicative of the actual intention of the parties (*Pearman* v. *Pearman,* 104 Cal.App.2d 250, 254 [231 P.2d 101]). However, the individual provisions of the agreement are not to be separately considered and construed, but the entire document is to be construed as a whole to effectuate its obvious intention (*Yarus* v. *Yarus,* 178 Cal.App.2d 190, 200-201 [3 Cal.Rptr. 50]).

The agreement here, apart from paragraph IX, is devoid of indications of any intent to provide for severable alimony. In the cases relied upon by plaintiff, such an intent was clearly expressed: in *Wise* v. *Wise,* 228 Cal.App.2d 322 [39 Cal.Rptr. 448], the alimony provision was to continue until the remarriage of the wife or the death of either party, "or until further order of Court"; in *Lish* v. *Lish,* 191 Cal.App.2d 343, 344 [12 Cal.Rptr. 538], the wife's right to maintenance and support was "Subject to the orders of any court of competent jurisdiction and not as a part of the division of the community property"; in *Kelley* v. *Kelley,* 151 Cal.App.2d 228, 234-235 [311 P.2d 90], the waiver provision contained typical termination provisions. In *Levitt* v. *Levitt,* 62 Cal.2d 477 [42 Cal.Rptr. 577, 399 P.2d 33], the most recent decision of our Supreme Court on the issue here involved, the wife's support provision was held severable where the agreement expressly provided that it was by way of alimony and not as a part of the property settlement.

One of the considerations emphasized in cases finding an integration of property and support provisions is the receipt by the wife of a heavy preponderance of the community property and a resulting implication of intention to relinquish or reduce her right to support in consideration of the disproportionate amount of property received by her (*Adams* v. *Adams,* 29 Cal.2d 621, 625 [177 P.2d 265]; *Helvern* v. *Helvern,* 139 Cal.App.2d 819 [294 P.2d 482]). An analysis of the agreement here discloses such implied intention since it appears that the defendant received the more valuable properties, the family home and the later model automobile.

 Furthermore, the agreement in the instant case is marked by the absence of *any* provisions for the termination

of the payments to the wife. Such provisions providing for termination of support on death or remarriage of the wife, while not conclusive, are generally regarded as indicative of alimony (*Fields* v. *Fields,* 94 Cal.App.2d 56, 59 [209 P.2d 977]). Here, the inclusion of paragraph XII, making the provisions of the agreement applicable to heirs and executors, indicates an intention that the payments were not to terminate on the death of either party. It appears the parties intended an everlasting obligation in line with the permanent settlement of their property rights.

The failure of the agreement to provide for modification is a significant omission. It was established in *Plumer, supra,* that even integrated property settlement agreements may be modified, if the agreement so provides.

We conclude, as a matter of law, that the property settlement agreement in the instant case was integrated and that the court erred in entering its order of October 8, 1963, reducing the alimony payments to defendant.

The order is reversed.

Shoemaker, P. J., and Agee, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 16, 1965. Peters, J., was of the opinion that the petition should be granted.